UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **EDCV 25-2662 JGB (MAAx)** | Date | October 28, 2025 |
|---|---|---|---|
| Title | ***Milton Obed Castillo-Hernandez v. Pamela Bondi, et al.*** | | |

Present: The Honorable    JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None | None |

**Proceedings:     Order: (1) GRANTING Petitioner's Application for a Temporary Restraining Order (Dkt. No. 1) (IN CHAMBERS)**

Before the Court is Petitioner Milton Obed Castillo-Hernadez's ("Petitioner") ex parte application for an emergency temporary restraining order. ("TRO," Dkt. No. 3.) The Court finds this matter appropriate for resolution without a hearing. See Fed. R. Civ. P. 78; L.R. 7-15. After considering the papers filed in support of and in opposition to the TRO, the Court **GRANTS** the TRO.

## I. BACKGROUND

On October 8, 2025, Petitioner filed a petition for writ of habeas corpus. ("Petition," Dkt. No. 1.) On October 9, 2025, Petitioner filed the TRO. (See TRO.) Petitioner filed an accompanying memorandum of points and authorities. ("Memo," Dkt. No. 3-1). The government ("Respondent") filed an opposition on October 10, 2025. ("Opposition," Dkt. No. 4.) Petitioner filed a reply on October 12, 2025. ("Reply," Dkt. No. 5.) This Court issued a minute order on October 20, 2025 enjoining the government from deporting Petitioner or transferring Petitioner outside of the jurisdiction of the Central District of California pending a ruling in this case. (Dkt. No. 7.)

## II. FACTS

Petitioner, a native and citizen of Guatemala, fled to the United States from Guatemala and entered the United States on or around August 4, 2024. (Memo at 1.) Department of Homeland Security ("DHS") officers apprehended Petitioner after he entered the U.S. (Id.) Petitioner was subject to reinstatement of removal under 8 U.S.C. § 1231(a)(5) owing to his previous removal from the U.S. (Id.) DHS officials placed Petitioner in detention prior to releasing him under an order of supervision ("OSUP") on or around September 4, 2024.[1] (Id. at 2.) DHS officials placed Petitioner in OSUP because they found that he was not a flight risk or danger to the community. (Id.) Subsequently, Petitioner resided in Medford, Oregon with his partner and his seven-year-old daughter. (Id.) Petitioner fully complied with the terms of his OSUP, reported to all of his required appointments, and did not face any arrests or criminal charges. (Id.)

On June 4, 2025, Immigration and Customs Enforcement ("ICE") officials re-detained Petitioner at a check-in appointment in Eugene, Oregon. (Id.) ICE provided Petitioner no prior notice of ICE's intention to detain him. (Id. at 3.) ICE officials subsequently transferred Petitioner to the ICE detention facility located in Adelanto, CA. (Id. at 2.) During the transfer, on or about June 8, 2025, Petitioner fell down the metal boarding steps of an aircraft while deplaning. (Id.) Petitioner had lost his footing while shackled at the wrists and ankles. (Id.) Petitioner subsequently experienced drooping in the left side of his face and numbness on the left side of his body. (Id.) ICE officers held Petitioner for several hours at the ICE detention facility in Adelanto, CA before transporting him to a local hospital for suspicion of stroke. (Id.) Petitioner remained hospitalized for over two weeks, from June 8, 2025 until June 23, 2025, before he was returned to the ICE detention facility in Adelanto, CA. (Id.)

Petitioner remains at the ICE detention facility in Adelanto, CA where he is segregated in the medical unit, uses a wheelchair, and is medically restricted from work. (Memo at 3.) Petitioner has been diagnosed with adjustment disorder and is experiencing symptoms of post-traumatic stress disorder. (Id.)

In June of 2025, ICE officials processed Petitioner's prior order of removal for reinstatement. (Opp. at 1.) An asylum officer determined on August 22, 2025 that Petitioner has a reasonable fear of persecution or torture if returned to Guatemala. (Memo at 3.) Petitioner has been referred to an immigration judge for hearings on an application for withholding of removal under 8 U.S.C. § 1231(b)(3). (Id.) Petitioner had a hearing scheduled for October 14, 2025 in his immigration case. (Opp. at 1.) The purpose of this hearing was for Petitioner to submit the required I-589 application for withholding of removal.[2] (Reply at 2.) Since Petitioner's detention, ICE officers have provided him no information as to the reason behind the revocation of his OSUP and have not provided him an individual hearing before a neutral decisionmaker.

---

[1] Respondent states that Petitioner was not detained prior to the revocation of his OSUP. (Opp. at 1.) Whether Petitioner had or had not been detained after his reentry in 2024 is not germane to this action.

[2] The Court is unaware of what occurred at this hearing.

**CIVIL MINUTES—GENERAL**          Initials of Deputy Clerk mg

(Memo at 3.)  ICE officers have also failed to provide Petitioner any "particularized evidence" that Petition is a danger to the community or a flight risk.[3]  (Id.)

## III. LEGAL STANDARD

A temporary restraining order may be issued upon a showing that "immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition."  Fed. R. Civ. P. 61(b)(1)(A).  The purpose of a TRO is to preserve the status quo and prevent irreparable harm until a hearing may be held on the propriety of a preliminary injunction.  See Reno Air Racing Ass'n, Inc. v. McCord, 452 F.3d 1126, 1131 (9th Cir. 2006).  The standard for issuing a TRO is identical to the standard for issuing a preliminary injunction.  Lockhead Missile & Space Co. v. Hughes Aircraft Co., 887 F. Supp. 1320, 1323 (N.D. Cal. 1995).

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."  Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008).  "A preliminary injunction is an extraordinary and drastic remedy; it is never awarded as of right."  Munaf v. Geren, 553 U.S. 674, 690 (2008) (citations omitted).  An injunction is binding only on parties to the action, their officers, agents, servants, employees, attorneys, and those "in active concert or participation" with them.  Fed. R. Civ. P. 65(d).

Courts in the Ninth Circuit may consider the Winter factors on a sliding scale and grant an injunction where the plaintiff raises "serious questions going to the merits, and a balance of hardships that tips sharply toward the plaintiff" if "the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest."  All. for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1134-35 (9th Cir. 2011) (noting that the latter two elements are "the other two elements of the Winter test").

## IV.  DISCUSSION

To secure a TRO or a preliminary injunction, Petitioner must show that he is likely to succeed on the merits, likely to suffer irreparable harm, and that the balance of equities and the public interest tip in their favor.  Winter, 555 U.S. at 20.  Likelihood of success on the merits "is a threshold inquiry and is the most important factor."  Env't Prot. Info. Ctr. v. Carlson, 968 F.3d 985, 989 (9th Cir. 2020).

//
//
//

---

[3] Nor does the government provide the Court with any rationale for Petitioner's re-detention beyond a vague and conclusory assertion that "the government is taking steps to remove petitioner."  (Op. at 3.)

**CIVIL MINUTES—GENERAL**    Initials of Deputy Clerk mg

## A.    Jurisdiction

Petitioner challenges his detention by ICE and seeks habeas relief pursuant to 28 U.S.C. § 2241.  (Petition ¶ 12.)   "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody."  Preiser v. Rodriguez, 411 U.S. 475, 484, 93 S. Ct. 1827, 1833, 36 L. Ed. 2d 439 (1973).  Accordingly, the Court's habeas jurisdiction is properly invoked.

## B.    Likelihood of Success on the Merits

"Likelihood of success on the merits is a threshold inquiry and is the most important factor."  Env't Prot. Info. Ctr. v. Carlson, 968 F.3d 985, 989 (9th Cir. 2020).  Petitioner argues that his detention violates his Fifth Amendment substantive and procedural due process rights. (TRO at 5.)  "Freedom from imprisonment . . . lies at the heart of the liberty" that the Fifth Amendment's Due Process Clause "protects."  Zadvydas v. Davis, 533 U.S. 678, 690 (2001).

"[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."  Id. at 693.  As a result, the government can only detain individuals outside of the criminal context in "certain special and 'narrow' nonpunitive 'circumstances.'"  Id. at 690 (citing Foucha v. Louisiana, 504 U.S. 71, 80 (1992)).  Under 8 U.S.C. § 1231, the "post-removal-period detention statute," there are two permissible goals for post-removal detention: "preventing flight" and "protecting the community."  Id.  Because flight risk is attenuated where removal is not possible and indefinite detention on the basis of protecting the community is allowed under only limited circumstances, the Supreme Court held that "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute."  Id. at 699.  Otherwise, "[a] statute permitting indefinite detention of an alien would raise a serious constitutional problem."  Id. at 690.

Furthermore, the Court has separately recognized that an individual on parole, which is analogous to an order of supervision, has a liberty interest under the Fourteenth Amendment's Due Process Clause requiring "some informal procedural guarantees."  Morrissey v. Brewer, 408 U.S. 471, 482-83 (1972); see also Gagnon v. Scarpelli, 411 U.S. 778, 782 (1973) (extending Morrisey to probation revocation); Young v. Harper, 520 U.S. 143, 145 (1997) (extending Morrissey to Oklahoma's preparole program because it is also "a kind of parole").  This liberty interests arises even though a revocation of parole arises outside of the protections of criminal proceedings.  Morrissey, 408 U.S. at 480.  "[T]he loss of liberty entailed is a serious deprivation requiring that the parolee be accorded due process."  Gagnon v. Scarpelli, 411 U.S. 778, 781 (1973).  Further emphasizing that this liberty interest does not arise exclusively in the criminal context, the Supreme Court compared the right guaranteed parolees to a "preliminary hearing" to that guaranteed welfare recipients prior to the termination of their benefits.  Morrissey, 408 U.S. at 485 (citing Goldberg v. Kelly, 397 U.S. 254, 267-271 (1970)).  Although the Due Process Clauses of the Fifth and Fourteenth Amendments cannot always be read uniformly, see Fuld v. Palestine Liberation Org., 606 U.S. 1, 13 (2025), the Court is convinced that the liberty interest protecting parolees from revocation without a hearing applies with equal force to noncitizens under orders of supervision.  See J.O.L.R., Petitioner, v. Minga Wofford, Mesa Verde ICE

Processing Ctr. Facility Administrator, No. 1:25-CV-01241-KES-SKO (HC), 2025 WL 2908740, at *5 (E.D. Cal. Oct. 14, 2025) ("The Court finds that petitioner has a protected liberty interest in his release."); Rodriguez Diaz v. Garland, 53 F.4th 1189, 1205 (9th Cir. 2022) ("The Fifth Amendment entitles aliens to due process of law in deportation proceedings.").

Finally, it is well-established that government agencies must follow their own regulations. Morton v. Ruiz, 415 U.S. 199, 235, 94 S. Ct. 1055, 1074, 39 L. Ed. 2d 270 (1974) ("Where the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures. This is so even where the internal procedures are possibly more rigorous than otherwise would be required."). Here, the government has promulgated two regulations to govern orders of supervision. ICE may only revoke an order of supervision if: "(i) The purposes of release have been served; (ii) The alien violates any condition of release; (iii) It is appropriate to enforce a removal order or to commence removal proceedings against an alien; or (iv) The conduct of the alien, or any other circumstance, indicates that release would no longer be appropriate." 8. C.F.R. § 241.4(l)(2). ICE officials must provide an individual whom ICE decides to re-detain with a copy of the decision "with the reasons for the continued detention." 8 C.F.R. § 241.4(d). Subsequently, ICE must provide the noncitizen "an initial informal interview promptly . . . to afford the alien an opportunity to respond to the reasons for revocation." 8 C.F.R. § 241(l)(1). Multiple courts have interpreted 8 C.F.R. § 241(l)(1) as requiring an informal interview when ICE revokes a noncitizen's order of supervision. See Ceesay v. Kurzdorfer, 781 F. Supp. 3d 137, 163 (W.D.N.Y. 2025) (collecting cases); Grigorian v. Bondi, No. 25-CV-22914-RAR, 2025 WL 2604573, at *9 (S.D. Fla. Sept. 9, 2025) ("The opportunity to contest detention through an informal interview is not some ticky-tacky procedural requirement; it strikes at the heart of what due process demands.").

Following the Supreme Court's decision in Zadvydas v. Davis, ICE issued 8 C.F.R. § 241.13 to govern custody determinations for noncitizens subject to a final order of removal whose removal period has expired and where there is not a significant likelihood of removal. Continued Detention of Aliens Subject to Final Orders of Removal, 66 Fed. Reg. 56967 (Nov. 14, 2001). ICE can only re-detain a noncitizen subject to 8 C.F.R. § 241.13 if the noncitizen has violated the conditions of his release or if ICE has determined "on account of changed circumstances . . . there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(1)-(2). In the latter case, ICE must provide the noncitizen an "informal interview promptly . . . to afford the alien an opportunity to respond to the reasons for revocation." 8 C.F.R. § 241.13(i)(3). Thus, if a noncitizen is subject to 8 C.F.R. § 241.13, ICE may only detain them under more limited circumstances than 8 C.F.R. § 241.4(l) and must similarly provide them an informal interview.

Thus, the Court finds that under the Fifth Amendment's Due Process Clause Petitioner has a right to be free from indefinite detention, a liberty interest to an informal hearing prior to revocation of his order of supervision, and a right to an informal interview under ICE's internal procedures. The Court disagrees that "[t]he government is allowed to revoke [an order of supervision] for nearly any reason." (Opp. at 4.) Even accepting that 8 C.F.R. § 241.4(l)(2) allows the government to revoke supervision under "any other circumstance," the government

does not deny that it failed to give Petitioner an informal interview as required by 8 C.F.R. § 241.4(l)(1).[4]  (Opp. at 4.)

The Court now turns to the question of what procedures are appropriate to protect Petitioner's liberty interest.  Under Mathews v. Eldridge, the Court considers three factors:[5] "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. 319, 335 (1976).

Under the first factor, Courts have regularly described a petitioner's interest in remaining out of custody as "substantial."  Diaz v. Kaiser, No. 3:25-CV-05071, 2025 WL 1676854 (N.D. Cal. June 14, 2025).  The weight of the factor grows as a party remains out on bond for an extended period of time.  Morrissey, 408 U.S. at 482.  Here, Petitioner was released under an order of supervision for ten months before his re-detention and had been residing with his wife and young daughter.  Petitioner's interest is significant.

As to the second factor, the risk of an erroneous deprivation of Petitioner's liberty interest is high with no process offered to Plaintiff during his re-detention and no rationale provided for his re-detention.  This risk is heightened in the context of civil immigration detention, which must be "nonpunitive in purpose." Zadyvdas, 533 U.S. at 690.

As to the third factor, "the government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions." Hernandez v. Sessions, 872 F.3d 976, 994 (9th Cir. 2017).  Although the Ninth Circuit's holding arose in a challenge to a different statute governing immigration detention, 8 U.S.C. § 1226(a), the Court finds the Ninth Circuit's reasoning equally availing here.  The government's previous decision to release Petitioner on an OSUP demonstrates that the government found that Petitioner was not a danger to the community and that his presence in future immigration proceedings could be "ensured by . . . alternative conditions." Id.

Accordingly, the Court concludes that Petitioner has demonstrated a likelihood of success on the merits.

---

[4] The parties cite to both 8 C.F.R. §§ 241.4 and 241.13 throughout their briefs, without clarifying which one applies specifically to petitioner.  Because both require an informal interview, the Court need not decide which regulation applies to Petitioner.

[5] The Court follows the Ninth Circuit, which regularly employs Mathews v. Eldridge in due process challenges in the immigration context.  See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206-07 (9th Cir. 2022).

### C.    Irreparable harm

Petitioner is suffering irreparable harm because Petitioner is likely being detained in violation of his constitutional rights.  "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'"  Hernandez v. Sessions, 872 F.3d 976, 994 (9th Cir. 2017) (quoting Melendres v. Arpaio, 695 F.3d 990, 1002 (9th Cir. 2012)).

Furthermore, as the Ninth Circuit has explained, "immigration detention" results in "subpar medical and psychiatric care . . . , [] economic burdens . . . on detainees and their families . . . , and [] collateral harms to children of detainees."  Hernandez, 872 F.3d 976, 995 (9th Cir. 2017).  Petitioner's detention is impacting his ability to recover from the fall he suffered in detention, and he is unable to work to provide for his family.  (Mot. at 9-10.)  Therefore, Petitioner faces irreparable harm.

### D.    Balance of equities and public interest

Where the government is the opposing party, balancing of the equities and the public interest merge.  See Nken v. Holder, 556 U.S. 418, 435 (2009).  Thus, the Court asks whether any significant "public consequences" would result from issuing the preliminary injunction.  Winter, 555 U.S. at 24.

As other courts have recognized, "the public has a strong interest in upholding procedural protections against unlawful detention."  Vargas v. Jennings, No. 20-CV-5785-PJH, 2020 WL 5074312, at *4 (N.D. Cal. Aug. 23, 2020).  And the government "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations."  Zepeda v. U.S. Immigr. & Nat. Serv., 753 F.2d 719, 727 (9th Cir. 1983).  Likewise, in the absence of an injunction, Petitioner is and will continue to experience prolonged detention, his child will remain without a parent, and his family will suffer significant financial consequences.  Therefore, the Court, like many courts across the country, finds that the only reasonable relief is Petitioner's release.  See Grigorian, 2025 WL 2604573, at * 10 (collecting cases).

Due to the minimal harms suffered by the government, the Court will not require a security.

## V.    CONCLUSION

For the reasons described above, the Court **GRANTS** the TRO.  The Court **ORDERS** Respondent to immediately release Petitioner from their custody.

**IT IS SO ORDERED.**